UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

       Plaintiff,                               No. 16-12481

v.                                       District Judge Mark A. Goldsmith
                                          Magistrate Judge R. Steven Whalen

CHRISTOPHER NOVOSAD, ET AL.,

       Defendants.

                               /

**REPORT AND RECOMMENDATION**

On July 1, 2016, Plaintiff Allstate Fire and Casualty Insurance Company ("Allstate") filed a diversity action seeking a declaratory judgment arising out of an automobile accident that occurred on January 2, 2015. Allstate filed an amended complaint on July 8, 2016 [Doc. #4]. Before the Court are Allstate's motion for summary judgment as to Defendant Christopher Novosad [Doc. #56], and Defendant Christopher Novosad's cross-motion for summary judgment [Doc. #65],[1] which have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Plaintiff's motion [Doc. #56] be GRANTED and

---

[1] Mr. Novosad's motion for summary judgment also doubles as a response to Allstate's motion.

that Defendant's motion [Doc. #65] be DENIED.

## I.   FACTS

On January 2, 2015, Defendant Christoper Novosad, driving a 1998 Ford Explorer with a Texas license plate, was involved in an automobile accident in Bay City, Michigan. The passengers in the car were April Novosad (Christopher's wife), Hanna Novosad, and Lilly Novosad.  In its First Amended Complaint ("FAC") [Doc. #4], Allstate alleges that at the time of the accident, Christopher Novosad was the constructive owner and driver of the Ford Explorer, which was registered in Texas, and non-party Theodore Novosad, a Texas resident, was the titled owner of the Ford Explorer. *FAC*, ¶¶ 11-12.  Christopher and April Novosad were named insureds on a policy covering the Ford Explorer, issued by Allstate in Texas. *Id*. ¶ 14.  Christopher, April, and Hann Novosad (a minor) were injured in the accident. *Id*. ¶ 16. Following the accident, Allstate paid No-Fault benefits to the Novosads. *Id*. ¶ 17.

Allstate alleges that on the date of the accident, Christopher Novosad, the constructive owner and driver, was a Michigan resident who failed to obtain security for the automobile as required under Michigan law, and therefore "is not entitled to personal injury protection benefits from Plaintiff under the Michigan No-Fault statute." *Id*. ¶ 18.

Allstate raised a claim of equitable subrogation, in which it sought reimbursement from Defendant Michigan Assigned Claims Plan ("MACP") of all expenses that Allstate paid to or on behalf of April and Hanna Novosad stemming from the accident.  On

August 31, 2017, the Court granted MACP's motion for summary judgment and dismissed MACP with prejudice [Doc. #53].

Allstate seeks a declaratory judgment against the Novosad Defendants, asking the Court to declare "[t]hat Plaintiff...does not owe Michigan No-Fault Benefits to Defendant, Christopher Novosad." *FAC*, Prayer for Relief, ¶ A, Pg. ID 27. Allstate does not seek a money judgment against the Novosad Defendants.

Appended to Plaintiff's motion as Exhibit A is the Michigan State Police crash report related to the January 2, 2015 accident at issue. The report lists the address of Christopher, April, Hanna, and Lilly Novosad as 800 Joseph Run, Midland, MI 48842. It also indicates that Christopher Novosad had a Texas driver's license, and that the auto was both registered and insured in the State of Texas.

Plaintiff's Exhibit B is an automobile insurance policy for the 1998 Ford Explorer that Allstate issued in the State of Texas, AFCIC Auto Policy No. 816517518.  The first page of the Exhibit (Pg. ID 416) is a screen shot showing policy information as of January 2, 2015, the date of loss.  It indicates Christopher and April Novosad's address as 800 Village E., Apt. A, Midland, Michigan, but indicates the garaging address of the car as 2195 FM 3277, Livingston, Texas.  The "Policy Documents" section states that the policy was a "Texas Personal Auto Policy."  Plaintiff's Exhibit C, the AFCIC Auto Policy Garaging Address for the Ford Explorer, effective December 20, 2014, indicates that vehicle was garaged in Livingston, Texas.

April Novosad was deposed on January 18, 2017, and the transcript of her testimony is appended to Allstate's motion as Exhibit C. She began her testimony by acknowledging that she was not under any diagnosis that would affect her cognitive functioning or her ability to give truthful answers. *April Novosad Dep*., [Doc. #56, Exhibit C], Pg. ID 458. She testified that on the date of the accident (January 2, 2015), she lived at 800 Joseph Run, in Midland, Michigan, and had lived there since July of 2014. Her and Christopher's daughter Hanna started school in Midland at the end of August, 2014. *Id*. Pg. ID 461-62. She intended to stay permanently in Michigan, and did not have the "full intention" to divorce Christopher at that time. *Id*. Pg. ID 470, 473-74. April testified that about three months before the accident, Christopher relocated to Michigan and moved into the Midland apartment with her and their children. *Id*. Pg. ID 474. At the time Christopher moved to Michigan, he was working for a company that had an office in Ohio. However, he did not want to change his Texas address on his commercial drivers licensed because he might have to re-take the test or pay additional money. *Id*. Pg. ID 477. Although they still owned the house in Texas, the only items left there were the refrigerator and some "junk." They moved the washer, dryer, bed, and everything else to Michigan. *Id*. Pg. ID 478. She testified that when they were in the Midland apartment, they switched their mailing address from Texas to Michigan, and Christopher got mail from work at the Michigan address. *Id*. Pg. ID 491

April testified that Christopher or his father bought the 1998 Ford Explorer "for

her," and that Christopher gave her the car to use in Michigan, and to drive their children around:

> Q: And then Chris gave that vehicle to you to use in Michigan?
>
> A: Only to use. He didn't, like, put it in my name or nothing. But, yes, to drive his children around, yes, sir.
>
> Q: Okay.
>
> A: He brought it– he bought it in Texas and he put it on a trailer with his big old truck and ported it up from Texas to Michigan. And then he put it on Michigan soil and let me drive it around. *Id*. Pg. ID 487.

She testified that Christopher gave her the Ford Explorer before Thanksgiving (2014). At that time, he was driving his personal vehicle, an older flat-bed Dodge truck, to work in Ohio. The Ford and the Dodge were the only two cars in the household, and when April was not driving the Ford, she kept it at her residence in Midland. *Id*. Pg. ID 489-490. She stated that they never switched cars, because Christopher's Dodge had a manual transmission, which she did not know how to drive. *Id*. Pg. ID 508.

April testified that during the work week, Christopher stayed in Ohio, where his employer paid for him and other workers to stay on the site, but that on the weekends, Christopher "would come home to me." *Id*. Pg. ID 508.

Defendant Christopher Novosad's own motion for summary judgment [Doc. #65] acknowledges that the Livingston, Texas home was abandoned in August 2014 and listed for sale. *Defendant's Motion*, Pg. ID 688. The motion acknowledges that April Novosad

was domiciled in Michigan. Mr. Novosad worked at Corrpro in Medina, Ohio. *Id*. Although the allegations in the motion are unaccompanied by any affidavit from Christopher Novosad, and although the motion appears to have been drafted and filed not by Christopher Novosad, but by his father, Ted Novosad,, it is alleged that Christopher drove the Ford Explorer to Ohio for work beginning on November 30, 2014, returning on December 20, 2014.

Defendant's Exhibit E consists of receipts from a Holiday Inn Express issued to Corrpro (Christopher Novosad's employer), in the name of Mr. Novosad, with an address of 1055 Smith Road, Medina, Ohio. This is the address of Corrpro. *See* http://www.referenceforbusiness.com/history2/13/Corrpro-Companies-Inc.html (last visited 7/25/2018).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Michigan's No-Fault Act sets forth comprehensive statutory requirements governing when, and under what circumstances, persons injured in automobile accidents

are entitled to automobile insurance benefits, specifically personal injury benefits. First, M.C.L. § 500.3101(1) requires that owners or registrants of certain vehicles maintain personal protection, property protection, and residual liability insurance:

> "The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance."

If a Michigan resident owns a motor vehicle, then that vehicle is "required to be registered in this state." *Guraj v. Connecticut Indem. Ins. Co.*, 2006 WL 448688, at *2 (Mich. Ct. App. Feb. 23, 2006), citing *Wilson v. League Gen. Ins. Co.*, 195 Mich. App. 705, 709, 491 N.W.2d 642 (1992). M.C.L. § 500.3101(2)(l)(i) defines "owner" to include "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."

M.C.L. § 500.3113(b) provides that the owner of a motor vehicle that does not have the statutorily required insurance is not entitled to personal protection insurance benefits as the result of accidental injury:

> Sec. 3113. A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 31031 was not in effect.

It is undisputed that the Ford Explorer was not insured in Michigan. Therefore, under the statutory scheme, if either Christopher or April Novosad was a resident of Michigan who "owned" the Ford Explorer (as that term is defined in M.C.L. § 500.3101(2)(l)(i)) at the time of the accident, then neither is entitled to no-fault benefits. M.C.L. § 500.3113(b).

First, there is no dispute that April Novosad was a Michigan resident from July or August of 2014 to the date of the accident. Her deposition testimony establishes that her husband, Christopher Novosad, relocated to Michigan and resided with her about three months before the January 2, 2015 accident. Although Christopher disputes that he lived in Michigan, there is a wealth of evidence corroborating April's testimony:

-The Texas policy lists both April *and* Christopher Novosad as living in Michigan.

-The Michigan State Police accident report lists Christopher's address as being in Michigan.

-Christopher received mail in Michigan. *See Defendant's Exhibit B* (correspondence from the Texas insurance agent to Christopher, addressed to him in Michigan).

-Christopher concedes that he and his wife abandoned the Texas home in August, 2014.

-The hotel receipts from Medina, Ohio (where Christopher apparently suggests he lived) contain the name and address of Corrpro, supporting April's testimony that Christopher's employer provided temporary housing to its workers during the workweek.

Moreover, Christopher has not provided any admissible evidence refuting April's deposition testimony and showing that he did not reside in Michigan. Again, the non-moving party in a summary judgment motion must identify specific facts in affidavits, depositions or *other admissible evidence* showing there is a genuine issue for trial. *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001)(citing *Anderson*). Here, Christopher has not proffered any testimony, or even his own affidavit. Indeed, he did not even sign and file his own motion, his father did.[2] Christopher was a Michigan resident who claims that he owned the car. Under those facts, he was required to obtain Michigan insurance as a prerequisite to obtaining No-Fault personal protection benefits. He did not do so.[3]

Nor has Christopher rebutted April's testimony that she obtained possession of the Ford Explorer in November of 2014, before Thanksgiving, and had continuous use of it until the time of the accident, a period greater than 30 days. It has therefore been established that April was an owner of an uninsured car (or at least a co-owner) who

---

[2] For this reasons alone, Christopher Novosad's motion/response [Doc. #65] is subject to being stricken, and therefore the equivalent of no response.

[3] Because Christopher and April were Michigan residents and constructive owners of the Ford Explorer, and therefore required to obtain a Michigan No-Fault policy, it is not necessary to address the status of the Texas policy. I note, however, that the Texas policy could well be voided by the false statement that the car was garaged in Texas.

resided in Michigan. In cases where there are multiple owners, "under the plain language of MCL 500.3113(b), when none of the owners maintains the requisite coverage, no owner may recover PIP benefits." *Barnes v. Farmers Ins. Exch.*, 308 Mich. App. 1, 8–9, 862 N.W.2d 681, 685 (2014).

Under these facts, no reasonable trier of fact could find in favor of Christopher or April Novosad (personally or as next friend of Hanna Novosad), or against Allstate. Therefore, summary judgment should be granted to Allstate on its claim for declaratory relief.

For the same reasons, summary judgment should be denied to Christopher Novosad.[4]

### IV.  CONCLUSION

I recommend that Plaintiff Allstate's Motion for Summary Judgment [Doc. #56] be GRANTED, and that the Court declare that Plaintiff owes no duty to provide No-Fault benefits to Defendants Christopher Novosad, April Novosad, and April Novosad as Next Friend of Hanna Jolee Novosad.

---

[4] Christopher's motion [Doc. #65] contains a request that the Court rule "that Defendants owe no duty to Plaintiff [Allstate]." Pg. ID 679. However, Plaintiff Allstate is not seeking affirmative relief from the Novosads; rather, they seek a declaration that they owe no duty to the Novosads under the No Fault Act.

In addition, on August 4, 2016, the Clerk of the Court entered defaults against April Novosad and April Novosad as Next Friend of Hanna Jolee Novosad [Doc. #15 and #16]. Because they are in default, and because April has not signed the motion, April and Hanna are not properly part of Christopher's summary judgment motion.

I further recommend that Christopher Novosad's Motion for Summary Judgment [Doc. #65] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 26, 2018                s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

---

**CERTIFICATE OF SERVICE**

I hereby certify on July 26, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 26, 2018.

                                    s/Carolyn M. Ciesla
                                    Case Manager for the
                                    Honorable R. Steven Whalen