UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE FIRE AND CASUALTY
INSURANCE CO.,

    Plaintiff,                                   Case No. 16-cv-12481

vs.                                          HON. MARK A. GOLDSMITH

CHRISTOPHER NOVOSAD, ET AL.,

    Defendants.
_____/

**OPINION & ORDER**
**ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED JULY 26, 2018 (Dkt. 66), OVERRULING DEFENDANT CHRISTOPHER NOVOSAD'S OBJECTIONS THERETO (Dkt. 70), AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 56)**

This matter is now before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Steven Whalen (Dkt. 66). The R&R recommends denying Defendant Christopher Novosad's motion for summary judgment (Dkt. 65) and granting Plaintiff Allstate Fire and Casualty Insurance Company's ("Allstate") motion for summary judgment (Dkt. 56). Novosad filed objections to the R&R (Dkt. 70). After considering Novosad's objections, the Court adopts the R&R and grants Allstate's motion for summary judgment.

### I.     BACKGROUND

The factual background, with the exception of some factual disputes set forth below, has been set forth in the R&R and need not be repeated here in full. In brief summary, Christopher Novosad was involved in an automobile accident in Bay City, Michigan on January 2, 2015. In its complaint, Allstate alleged that the vehicle that Christopher was driving, a 1998 Ford Explorer, had a Texas license plate and was registered in Texas. Theodore "Ted" Novosad –

Christopher's father and a Texas resident – was the titled owner of the Explorer. Allstate argues that Christopher and his former wife April Novosad were constructive owners of the vehicle and, as Michigan residents who failed to obtain security for the vehicle as required under Michigan law, were not entitled to personal injury protection benefits from Allstate under the Michigan No-Fault statute, Mich. Comp. Laws § 500.3101 et seq. Allstate seeks a declaratory judgment that it does not owe No-Fault benefits to Christopher.

## II. STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(1). However, "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

## III. ANALYSIS

This case concerns the requirements of Michigan's No-Fault statute. Under Michigan law, "[t]he owner . . . of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." Mich. Comp. Laws § 500.3101(1). Generally, "[e]very motor vehicle . . . when driven or moved on a street or highway, is subject to the registration . . . provisions of this act," id. § 257.216. Although there is an exception for nonresidents, see id. § 257.216(a), "Michigan residents are required to register their vehicles in the state," Guraj v. Conn. Indemn. Ins. Co., No. 257509, 2006 WL 448688, at *2 (Mich. Ct. App. Feb. 23, 2006). An "owner" of a motor vehicle is someone "having the use of a motor vehicle . .

. for a period that is greater than 30 days." Mich. Comp. Laws § 500.3101(2)(l)(i). "'[H]aving the use' of a motor vehicle . . . means using the vehicle in ways that comport with concepts of ownership. . . . ownership follows from <u>proprietary</u> or <u>possessory</u> usage, as opposed to merely incidental usage under the direction or with the permission of another." <u>Ardt v. Titan Ins. Co.</u>, 593 N.W.2d 215, 218 (1999) (emphasis in original).

The owner of a vehicle that does not have the statutorily required insurance is not entitled to personal protection insurance benefits as a result of accidental injury. <u>Id.</u> § 500.3113(b). Although a vehicle may have more than one owner, at least one owner or registrant must maintain the statutorily-required insurance, and "when none of the owners maintains the requisite coverage, no owner may recover PIP benefits." <u>Barnes v. Farmers Ins. Exchange</u>, 862 N.W.2d 681, 685 (Mich. Ct. App. 2014). In the R&R, Magistrate Judge Whalen concluded that April and Christopher Novosad were residents of Michigan and co-owners of the 1998 Ford Explorer who did not have Michigan No-Fault insurance, and therefore were not entitled to recover personal protection benefits from Allstate. R&R at 9-11, PageID.749-751.

The Court now turns to Christopher Novosad's objections. As an initial matter, Christopher does not specifically set forth his objections as required under the Local Rules. <u>See</u> E.D. Mich. L.R. 72.1(d)(1) ("Objections under Fed. R. Civ. P. 72 must . . . specify the part of the order, proposed findings, recommendations, or report to which a person objects; and state the basis for the objection."). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986) (quoting <u>Nettles v. Wainwright</u>, 677 F.2d 404, 410 (5th Cir. 1982)). Christopher has failed to cite any specific portion of the R&R with which he disagrees. The Court will nevertheless endeavor to address the points raised in his filing.

Christopher asks the Court to document that Allstate is not seeking monetary relief from him. He asks that this "be documented properly and with [p]rejudice to protect all parties[.]" Def. Obj. at PageID.760. While Allstate's complaint does not request monetary relief from any of the Novosads, Christopher has not asked this Court for a declaratory judgment stating that Allstate will not seek reimbursement, and the Court will not issue one.

Christopher's next argument seems essentially to be that the magistrate judge erred in his factual findings. The argument is somewhat difficult to follow, but he claims that his former wife, April Novosad, made inaccurate statements in her deposition regarding his living in Michigan. Id. at PageID.760. He then points to several of the exhibits attached to his cross-motion for summary judgment to argue that he "was in Ohio the first 20 days of December," rather than Michigan. Id. at PageID.761. He argues that he "was not a resident in Michigan as stated[.]" Id. at PageID.760.

To understand Christopher's criticism, it is necessary to lay out April Novosad's testimony. April testified that she moved to Michigan in July or August of 2014. April Novosad Dep., Ex. C to Pl. Mot., at 17, PageID.470 (Dkt. 56-3). Approximately three months prior to the accident, Christopher relocated from Texas to Michigan to live with her. Id. at 21-22, PageID.474. Christopher brought the Ford Explorer to Michigan "[a]round Thanksgiving time," id. at 35-36, PageID.488, "maybe a few days before Thanksgiving," id. at 36, PageID.489. She testified that Christopher or his father bought the Ford Explorer, and that Christopher gave her the car to use in Michigan. Id. at 34, PageID.487. April testified that around that time, the only two cars in their household were the Ford Explorer and a "flat-bed Dodge," and that Christopher drove the flat-bed truck to work in Ohio. Id. at 36, PageID.489-490. The Ford Explorer was kept at the apartment in Michigan when April was not using it. Id. at 37, PageID.490. April

4

testified that Christopher would stay in Ohio during the week, and on the weekends would "come home to me" in the apartment that they rented in Michigan. Id. at 55, PageID.508. She also testified that generally, "when Chris was in my presence and it was me or Chris driving, I never drove." Id. at 47, PageID.500.

Christopher argues that Allstate's attorneys tried to confuse April, and says that she has suffered a brain injury. However, the only evidence he references to support his assertion of April's alleged confusion is Exhibit H to his own summary judgment motion – an unreadable document that Christopher describes as a statement from Dr. Baha Nahata referring to April's "condition." Def. Mot. for Summ. J. at PageID.686. He claims that the letter states that her "condition prevents her from going or being in unfamiliar places and must not drive outside these areas." Id. at PageID.694. However, Christopher did not sign the summary judgment motion; in fact, no one did.[1] The Federal Rules provide that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a). Magistrate Judge Whalen observed that the cross-motion for summary judgment could be stricken for Christopher's failure to sign and was therefore equivalent to filing no response. R&R at 10 n.2, PageID.750. Christopher has not attempted to correct his unsigned filing, and the Court will therefore strike his filing.[2] Even if the Court were to consider his filing, the unreadability of Exhibit H renders it without any value to support

---

[1] It was apparently filed by Ted Novosad, his father. See Docket text for Dkt. 65; Certificate of Service, Cross-Motion for Summ. J., at PageID.703 (reciting that Ted Novosad filed the document).

[2] In his objection, Novosad states that Magistrate Judge Whalen "gave permission to Christopher Novosad and his father Ted Novosad, allowing Ted Novosad to respond to the Plaintiff's Summary Judgement, with recommendations." Def. Obj. at PageID.759. There is no evidence to support this, and it seems highly unlikely that the magistrate judge would have allowed a non-attorney to represent a party. In any case, Ted Novosad never signed the document.

Christopher's cross-motion for summary judgment. Thus, he has presented no evidence to support his assertions.

On the other hand, while she stated that she suffered a brain injury, April was asked at the beginning of her deposition whether she was under any medication or under the diagnosis of any doctor that would affect her ability to give truthful answers, and she responded that she "will remember what I can remember. I will speak the truth." April Novosad Dep. at 5, PageID.458.

Additionally, other evidence corroborates April's testimony regarding where she and Christopher resided. See, e.g., Letter, Ex. B to Pl. Mot., at PageID.417 (Dkt. 56-2) (December 18, 2014 letter addressed to April and Christopher Novosad in Midland, Michigan); Def. Mot. for Summ. J. at PageID.688 ("The home in Livingston [Texas] was abandoned in August 2014 and put on the market for sale."); Receipts, Ex. E to Def. Mot. for Summ. J., at PageID.717 (Dkt. 65) (Holiday Inn Express invoice for Corrpro in Medina, Ohio, for December 1, 2014 to December 18, 2014, supporting April's testimony that Christopher would stay in Ohio during the week at a place his employer arranged);[3] AFCIC Auto Policy as of 1/2/2015, Ex. B to Pl. Mot., at PageID.416 (showing the address for April and Christopher Novosad as 800 Village E, Apt. A in Midland, Michigan). Evidence of his Michigan residency is found in the State of Michigan Traffic Crash Report, Ex. 1 to Pl. Mot., at PageID.413 (Dkt. 56-1), which lists Midland, Michigan as Christopher and April Novosad's address. Given the fact that Novosad has not put forth any evidence to show that April Novosad's statements are inaccurate or untruthful, her statements confirming Christopher's Michigan residency stand unassailed and unrefuted.

---

[3] In his objection, Christopher says that he started working in Ohio on December 1, 2014. See Def. Obj. at PageID.761. This is consistent with April's testimony that Christopher got the job in Ohio and moved to Michigan to be with her, and is not inconsistent with her estimation that Christopher relocated to Michigan three months prior to the January accident. April Novosad Dep. at 21-22, PageID.474.

Christopher claims that April's testimony is internally inconsistent, and points to two examples. At one point April stated that she, Christopher, and their children lived at 800 Joseph Run, Midland, Michigan, April Novosad Dep. at 8, PageID.461; later in her deposition she stated, "Joseph Run, that's where I lived," id. at 19, PageID.472. These statements are not inconsistent.[4] Christopher also points out that, when asked why she came to Michigan, April responded, "I was building a residency. I wanted to divorce Chris." Id. at 17, PageID.470. Later, when asked whether it was her intent to divorce Christopher when she moved to Michigan, she responded, "I didn't have a full intention of divorcing him at that time yet. . . . I wouldn't – I wouldn't say that it wasn't in the back of my mind." Id. at 20-21, PageID.473-474. These statements are not inconsistent, and at any rate, they are irrelevant to the magistrate judge's conclusions in the R&R.

Thus, while Christopher asserts that April "did not have possession of the Ford Explorer as stated in her deposition," Def. Obj. at PageID.762, he has not put forth any evidence to rebut April's testimony that she obtained possession of the Ford Explorer in November 2014 and "ha[d] the use [thereof] . . . for a period that is greater than 30 days," Mich. Comp. Laws § 500.3101(2)(l)(i). Accordingly, he has not put forward any evidence to undermine the magistrate judge's finding that April was an owner of the Ford Explorer. Further, he has not rebutted her testimony that Christopher would drive whenever the pair traveled together, and that the vehicle was regularly kept at the Michigan apartment that he shared with her on weekends – testimony that supports the magistrate judge's finding that he was a co-owner (a finding to which he has

---

[4] Christopher also points out that Allstate "allowed an incorrect insertion from April Novosad's mother," which should have been stricken from the record, because the information was incorrect. Def. Obj. at PageID.760. The magistrate judge did not purport to rely on this statement in any way in the R&R, and Christopher fails to explain this statement's importance or why it must be stricken.

not objected). Thus, the two were co-owners of the Ford Explorer.

"The owner . . . of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance . . . ," id. § 500.3101, and generally, "[e]very motor vehicle . . . when driven or moved on a street or highway, is subject to the registration . . . provisions of this act," id. § 257.216. While there is an exception for nonresidents, see id. § 257.216(a), Christopher has also failed to provide any admissible evidence showing that he and April were not Michigan residents at the time of the accident.[5] Accordingly, the facts show that Christopher and April were required to have No-Fault insurance, and did not. Christopher's objection is overruled.

Christopher next raises several discovery-based objections, i.e. Allstate did not provide "all the records which prove opposite of their claim," Def. Obj. at PageID.761, and "canceled Depositions scheduled for Christopher Novosad, and his father Ted Novosad," id. at PageID.762. These disputes regarding discovery should have been raised in a motion to compel, and are not proper objections to the R&R.

Next, Christopher seems to argue that it is Allstate's fault that he did not have Michigan insurance. He states that "[t]he Vehicle Insurance ID card shows Plaintiff AllState Agent made the mistake in NOT have [sic] the correct Insurance for Michigan," and that the insurance agent "failed to recommend a Michigan Insurance Agent for proper insurance." Id. Even if Christopher had any evidence to support these assertions, he fails to explain why they should alter the magistrate judge's conclusions regarding his and April's residency and ownership of the

---

[5] Even if Christopher was not a Michigan resident, as he claims, April indisputably was, and was therefore required to obtain No-Fault insurance. And "when none of the owners maintains the requisite coverage, no owner may recover PIP benefits." Barnes, 862 N.W.2d at 685 (emphasis added).

Ford Explorer.

Christopher also states several times that Allstate is lying about certain issues and asserts that counsel for Defendant Michigan Alliance Claims Plan ("MACP")[6] can verify Christopher's version of the facts. See Def. Obj. at PageID.760 (". . . she was confused by the integration [sic] tactics of Plaintiff Attorney to confuse April into making inaccurate statements. This is verified by Dykema Attorney."); PageID.762 ("Reason for NO Deposition to be taken was totally Plaintiff decision and documented with Dykema Attorney through email and the court. Plaintiff doesn't want the truth on record with the court."); PageID.762 ("This can also be verified by Lorie McAllister with Dykema, Michigan Claims, who was present for the deposition . . ."). However, he does not provide an affidavit or declaration from MACP's counsel, or even provide his own sworn statement attesting to these facts.

In sum, the Court overrules Christopher Novosad's objection that "facts . . . were not taken into account" in the magistrate judge's ruling. The magistrate judge properly took into account the facts that were put into evidence. The non-moving party in a motion for summary judgment "may not rest on his pleadings, but must come forward with affidavits or other admissible evidence setting forth 'specific facts showing there is a genuine issue for trial.'" March v. Levine, 249 F.3d 462, 471 (6th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). Christopher has failed to do so, and the magistrate judge properly ruled in Allstate's favor on both motions for summary judgment.

IV. CONCLUSION

For the reasons provided, the Court adopts the R&R (Dkt. 66), overrules Christopher

---

[6] Allstate sought reimbursement from MACP; on August 31, 2017, the Court granted MACP's motion for summary judgment and dismissed MACP with prejudice. See 8/31/2017 Order (Dkt. 53).

Novosad's objections thereto (Dkt. 70), strikes Christopher Novosad's cross-motion for summary judgment (Dkt. 65), and grants Allstate's motion for summary judgment (Dkt. 56). The Court declares that Plaintiff Allstate is under no duty to provide No-Fault benefits to Christopher Novosad, April Novosad, or April Novosad as Next Friend of Hanna Jolee Novosad, under the No-Fault Act of the state of Michigan.

SO ORDERED.

Dated: September 27, 2018  　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan  　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 27, 2018.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager